# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| JALEN WEBB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 3:22-cv-00808** |
| | ) | **Judge Aleta A. Trauger** |
| KAPPA SIGMA FRATERNITY aka | ) | |
| KAPPA SIGMA INTERNATIONAL | ) | |
| FRATERNITY, KAPPA IOTA | ) | |
| at MIDDLE TENNESSEE/KAPPA | ) | |
| SIGMA HOUSING CORPORATION, | ) | |
| WILLIAM THOMAS COLE LUKENS, | ) | |
| CONNOR JACKSON CRESS, | ) | |
| JOSHUA M. RAMAEKERS, | ) | |
| BENJAMIN SCOTT MILLER, | ) | |
| CONNOR WHITE, | ) | |
| HUNTER LINDSAY GRAND, | ) | |
| KENNETH EVANS, | ) | |
| ADRIAN ALEXANDAR MENDOZA, | ) | |
| STEPHEN NICHOLAS DONAGHEY, | ) | |
| and CALEB PERKINS | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Before the court are two Motions to Dismiss, one brought by defendants Stephen Nicholas Donaghey and Caleb Perkins (Doc. No. 49), and the second brought by defendant Adrian Alexandar Mendoza (collectively with Donaghey and Perkins, the "moving defendants") (Doc. No. 61). The two motions and supporting Memoranda (Doc. Nos. 50, 62) are virtually identical to each other, as are the plaintiff's two Responses (Doc. Nos. 51, 63), and the defendants' two Replies (Doc. Nos. 52, 64). The court therefore considers the motions together. For the reasons set forth herein, the motions will be granted, and the claims against the moving defendants will be dismissed.

## I.   FACTS AND PROCEDURAL BACKGROUND

In the fall of 2021, plaintiff Jalen Webb was one of two Black pledges of the Kappa Iota Chapter of the Kappa Sigma International Fraternity (the "Fraternity"), at Middle Tennessee State University ("MTSU"). (Complaint, Doc. No. 1 ¶¶ 19–20.) Webb alleges that, beginning around October 14, 2021 and continuing "through to the expulsion of the chapter" (a date that the Complaint does not identify), he was subjected to racial discrimination, racial epithets, demeaning conduct, threats of bodily harm in the form of kidnapping and hanging, and "intense hazing, up to and including kidnapping" (among other things), by "the fraternity brothers responsible for the oversight" of the Fraternity, all of whom were White. (*Id.* ¶¶ 21–26.) Although the Complaint names as defendants ten former members of the Fraternity, purportedly in both their "individual capacity and in [their] capacity as a member" of the Fraternity (*id.* ¶¶ 4–13), it does not identify which of these individuals, if any, were "responsible for the oversight" of the Fraternity.[1]

The Complaint identifies several examples of "specifics and bad actors," which is "not intended to be exhaustive." (*Id.* ¶ 27.) However, the only allegations in the Complaint that specifically mention the three moving defendants are the paragraphs in which they are identified as defendants (*id.* ¶¶ 11–13), and two other subparagraphs that state, in their entirety:

> h. Defendant Adrian Mendoza brought the motion to kidnap the Plaintiff;

> i. Defendant Caleb Perkins regularly used racial slurs[.]

(*Id.* ¶ 27(h)–(i).) Otherwise, the Complaint alleges very generally that the Fraternity had a "systemic problem with racism, discrimination, insensitivity, and hazing." (*Id.* ¶ 28.)

---

[1] Defendant Lukens is identified as the former President of the Fraternity. (Doc. No. 1 ¶ 27(a).)

Based on these allegations (the "foregoing stated acts by the Defendants collectively" *id.* ¶¶ 36, 39)), the Complaint purports to state claims for relief under Tennessee law against all defendants for (1) negligent infliction of emotional distress ("NEID"); (2) intentional infliction of emotional distress ("IIED"); (3) assault, and (4) simple negligence.

The moving defendants seek dismissal of all claims against them on the grounds that the very general allegations in the Complaint fail to state a colorable claim against any of them, referencing the elements of the identified tort claims under Tennessee law. They point out that defendant Donaghey is not alleged to have taken any particular action, and they argue that the cursory allegations regarding Perkins and Mendoza are not sufficient to show that they acted tortiously. The moving defendants also argue that, although the Complaint employs the terms "individually and collectively," thus "attempt[ing] to set up some type of amorphous vicarious liability theory," the Complaint does not allege facts supporting any type of agency relationship between the moving defendants and any other defendants. (Doc. No. 50, at 9; Doc. No. 62, at 9.)

Mendoza also argues that, insofar as Webb might argue that he has made out a conspiracy claim, the Complaint again falls short, because it does not allege actual facts supporting the existence of a conspiracy or Mendoza's involvement in a conspiracy. He also argues that a conspiracy claim must be pleaded with some degree of specificity. (Doc. No. 62, at 10.)

In his Response to both motions, Webb asserts that it "should be noted" that the defendants do not "deny the conduct that is alleged to have occurred" or that they were "a part of the fraternity and involved in the concerted actions that were plead[ed] of which all of the Defendants acted in collectively." (Doc. No. 51, at 1; Doc. No. 63, at 1.) He contends that, insofar as the defendants' arguments contest the sufficiency of the evidence rather than the sufficiency of the pleadings, they are inappropriate at this juncture. With regard to the argument that the allegations addressed

specifically to the conduct of the moving defendants are meager at best, Webb protests that the law does not require "that specific facts need[] to be alleged to each of them," because the Complaint adequately "pleads the actions of the Defendants 'collectively.'" (Doc. No. 51, at 2; Doc. No. 63, at 2.) More specifically, he asserts:

> In every matter that the complaint pleads that the Defendants acted both individually and collectively, that is a very specific allegation made against all of the Defendants both jointly and individually; this is called an action in concert in the law and this substantive law has been well established in Tennessee.

(*Id.*) By "concert of action," the plaintiff apparently means that he intends to bring a claim of civil conspiracy against each of the defendants, although he does not label it as such. (*See id.* ("The courts of this State have recognized that 'when two or more persons engage in an unlawful act and one of them commits a serious civil injury upon a person not engaged therein, all are equally liable for damages to the injured party.'" (quoting *Huckeby v. Spangler*, 521 S.W.2d 568, 573 (Tenn. 1975)).)

In their Reply briefs, the moving defendants point out both that they deny engaging in wrongdoing and that a Motion to Dismiss is not the venue for disputing the factual allegations in a Complaint. They also maintain that the Complaint in this case contains no concrete factual allegations to support the tort claims against them or to support the existence of (or their participation in) a conspiracy. (Doc. Nos. 52, 64.)

## II. LEGAL STANDARD

Rule 12 permits dismissal of a lawsuit, or claims within a lawsuit, for failure to state a claim upon which relief could be granted. Fed. R. Civ. P. 12(b)(6). While a court deciding a Rule 12(b)(6) motion to dismiss must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff," *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir.

2016), the court "may reject 'mere assertions and unsupported or unsupportable conclusions.'" *United States v. Wal-Mart Stores E., LP*, 858 F. App'x 876, 878 (6th Cir. 2021) (quoting *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 876 (6th Cir. 2006)). The court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The complaint's allegations, that is, "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action" but, instead, must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678–79. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.[2]

## III. ANALYSIS

### A. The Elements of the Plaintiff's Claims

The Complaint articulates negligence/NEID, IIED, and assault claims. The court's jurisdiction is premised upon diversity, and the substantive claims are governed by Tennessee common law. To recover for NEID, a plaintiff in Tennessee must satisfy the five elements of ordinary negligence (duty, breach of duty, injury or loss, causation in fact, and proximate or legal

---

[2] Generally, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The court notes that the plaintiff filed with his Responses to the Motions to Dismiss an "Investigative Report." (*See* Doc. Nos. 51-1, 63-1.) This document is not referred to in the Complaint, nor is it central to the claims contained therein. The court has not considered this document in ruling on the pending motions.

cause) and establish that he suffered a serious or severe emotional injury. *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 206 (Tenn. 2012). In addition, if the NEID claim is "one for emotional disturbance alone in the absence of a physical injury, the serious or severe mental injury must be proven 'through expert medical or scientific proof.'" *Id.* at 206 n.10 (quoting *Flax v. DaimlerChrysler Corp.*, 272 S.W.3d 521, 528 (Tenn. 2008)). An IIED claim does not require expert proof, but it requires proof "that the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff." *Id.* at 205.

"In Tennessee, the tort of assault has two elements: '(1) An intentional attempt or the unmistakable appearance of an intentional attempt to do harm to, or to frighten, another person; and (2) [t]he present ability or the unmistakable appearance of the present ability to do that harm or to cause that fright.'" *Doe v. Andrews*, 275 F. Supp. 3d 880, 887 (M.D. Tenn. 2017) (quoting Tenn. Pattern Jury Instructions – Civil § 8.01); *see also Hughes v. Metro. Gov't*, 340 S.W.3d 352, 371 (Tenn. 2011).

### B. Whether the Complaint States Claims Against the Moving Defendants Individually

Webb is generally incorrect, insofar as he contends that he is not required under Rule 12(b)(6) to allege "specific facts" as to each individual defendant. As set forth above, the Complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678–79.

#### 1. Donaghey

With regard to defendant Donaghey, in particular, the analysis of the sufficiency of the pleadings to support any of these claims is straightforward. The Complaint contains *no* facts from which it might plausibly be inferred that Donaghey participated in tortious conduct. The only

paragraph in the entire pleading directed to him states that he is sued in both his individual capacity and "in his capacity as a member" of the Fraternity and that he may be served at his home address in Murfreesboro, Tennessee. (Doc. No. 1 ¶ 12.) The Complaint does not allege facts suggesting Donaghey's role in the Fraternity, that he was a "fraternity brother[] responsible for oversight of [Kappa] Iota," or that he participated personally in any of the conduct alleged to have harmed Webb. (*See id.* ¶¶ 22–26.) The Complaint fails to state any claim against Donaghey individually.

### 2. *Perkins*

Regarding Perkins, aside from identifying him, the Complaint alleges that this defendant "regularly used racial slurs." (*Id.* ¶ 27(i).) The moving defendants first state that the Complaint fails to allege that Perkins owed Webb a duty. Under Tennessee law, however, individuals generally "have a duty to others to refrain from engaging in affirmative acts that a reasonable person should recognize as involving an unreasonable risk of causing an invasion of an interest of another or acts which involve an unreasonable risk of harm to another." *Riggs v. Wright*, 510 S.W.3d 421, 427 (Tenn. Ct. App. 2016) (internal quotation marks and alteration omitted); *see also* Restatement (Second) of Torts ("Restatement") §§ 284, 302, at 19, 82 (1965)). In other words, "[a]ll persons have a duty to use reasonable care to refrain from conduct that will foreseeably cause injury to others." *Bradshaw v. Daniel*, 854 S.W.2d 865, 870 (Tenn. 1993). Whether a defendant owes a duty to a plaintiff in any given situation is a question of law for the court." *Riggs*, 510 S.W.3d at 427 (citing *Bradshaw*, 854 S.W.2d at 869).

The court is not prepared to speculate under what circumstances one person's regular use of racial slurs, *per se*, might foreseeably cause injury to another. Regardless, the Complaint does not allege sufficient facts to suggest that Perkins' use of racial slurs *breached* a duty *to the plaintiff* or caused him serious emotional injury. Irrespective of the moral repugnance of such conduct, the

Complaint does not allege that these slurs were directed to Webb or even uttered in his presence,[3] nor does it claim that hearing racial slurs caused Webb severe emotional distress. The Complaint fails to state an NEID claim based on the bare allegation that Perkins regularly used racial slurs.

The IIED claim against Perkins fails for the same reasons, but also because Perkins' alleged regular use of racial slurs, standing alone, without some context, does not qualify as conduct sufficiently outrageous to support the claim. *See Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 51 (Tenn. 2004) (emphasizing that "it is not sufficient that a defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress. A plaintiff must in addition show that the defendant's conduct was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community" (internal quotation marks and citations omitted)). As for assault, the Complaint does not allege any facts suggesting that Perkins engaged in an intentional attempt to frighten or physically harm Webb.

The Complaint, in short, fails to state a claim against Perkins individually.

### 3.      *Mendoza*

The allegation that Mendoza "brought the motion to kidnap the Plaintiff" (Doc. No. 1 ¶ 27(h)) is similarly lacking in context. Although the Complaint alleges that "fraternity brothers responsible for oversight" of the Fraternity "threatened [Webb] with bodily harm to include kidnapping and hanging" and "subjected [him] to intense hazing, up to and including kidnapping" (*id.* ¶¶ 25, 26), the Complaint does not actually allege that Mendoza personally threatened Webb with kidnapping or participated in an actual kidnapping. Instead, Mendoza made a motion, perhaps

---

[3] Notably, the plaintiff alleges that particular other defendants used racial slurs "to [his] face" or "around" him. (Doc. No. 1 ¶ 27(c) & (d).)

at a Fraternity meeting.

It seems unlikely that Webb, as a pledge, would have been present at a Fraternity meeting in which a plan to "kidnap" him was hatched, and the Complaint does not allege facts from which it might reasonably be inferred that Webb was at such a meeting. The Complaint does not state how Webb learned about Mendoza's statement, and it does not suggest how the making of a motion that Webb did not witness could, *per se*, cause him severe emotional distress, that the statement was intended to cause him emotional distress, or that the making of a motion itself—at a meeting at which Webb was not present—constituted an intentional attempt to frighten or physically harm Webb. The allegations, even accepted as true, are not sufficient to show that Mendoza breached any duty, for purposes of a negligence or NEID claim, that he engaged in conduct sufficiently outrageous to state an IIED claim, or that the "motion" constituted an intentional attempt to frighten or physically harm Webb.

The Complaint fails to state a claim against Mendoza individually.

### C.     Whether the Complaint States a Claim Against the Moving Defendants for Joint Liability Based on "Collective" Action or Conspiracy

The elements of a cause of action for civil conspiracy under Tennessee law are: "(1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury." *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 556 (Tenn. Ct. App. 2012). "The purpose of a conspiracy claim is to ensure that each conspirator may be held 'responsible for everything done by his confederate which the execution of the common design makes probable as a consequence; in other words, each conspirator is liable for the damage caused by the other.'" *Freeman Mgmt. Corp. v. Shurgard Storage Centers, LLC*, 461 F. Supp. 2d 629, 642–43 (M.D. Tenn. 2006) (Wiseman, S.J.)

(quoting *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 67 (Tenn. 2001)); *accord Huckeby v. Spangler*, 521 S.W.2d 568, 573 (Tenn. 1975) ("There is no question but that when two or more persons engage in an unlawful act and one of them commits a serious civil injury upon a person not engaged therein, all are equally liable for damages to the injured party. . . . [A]ll persons involved in a civil conspiracy or other unlawful activity are jointly liable."). In other words,

> [c]onspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration. By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy. In this way, a coconspirator incurs tort liability co-equal with the immediate tortfeasors.

*Id.* (quoting *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 457 (Cal. 1994)).

While the defendants argue that conspiracy claims must be pleaded with some degree of specificity, the court finds that it is not necessary to apply any enhanced pleading standard. Under *Twombly* and *Iqbal*, it is clear that conclusory allegations unsupported by material facts will not be sufficient to state such a claim. *See United States v. Wal-Mart Stores E., LP*, 858 F. App'x 876, 878 (6th Cir. 2021) ("[T]he court may reject mere assertions and unsupported or unsupportable conclusions." (internal quotation marks and citations omitted)).

As applied to this case, that means that the Complaint's unadorned assertions that the defendants acted "collectively," without more, are not sufficient to state a conspiracy claim or establish joint liability. The mere fact that the defendants were members of a Fraternity, even a Fraternity plagued by pervasive and blatant racism and hazing, does not give rise to a reasonable inference that every member of the Fraternity was involved in a common plan or design to accomplish an unlawful purpose, or a lawful purpose by unlawful means.

As relevant to the moving defendants' Motions to Dismiss, as set forth above, the mere

fact that Donaghey was a member of the Fraternity would not establish his liability for the wrongful acts of other members. Likewise, Perkins' membership in the Fraternity combined with his "use of racial slurs" does not establish that he acted "collectively" with other members or was involved in an alleged conspiracy.

Mendoza's alleged "motion" to kidnap Webb presents a closer call, because a conspiracy to kidnap the plaintiff would likely qualify as a common plan or design to accomplish an unlawful purpose. The Complaint, however, ultimately does not contain enough "dots" to suggest a complete picture, much less attempt to connect those dots. The Complaint certainly implies that Webb was subjected to some awful behavior, but it is vague—at best—as to what events caused him emotional distress and does not allege any actual facts that would support an inference that the moving defendants were personally involved in whatever those events were. The Complaint fails to articulate *facts* from which it may plausibly be inferred that Mendoza was involved in a conspiracy to kidnap Webb.

## IV.    CONCLUSION

For the reasons set forth herein, both pending motions will be granted, and the claims against the moving defendants will be dismissed for failure to allege sufficient facts to support any claim for relief against those defendants. An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge